**COHELAN KHOURY & SINGER**
Timothy D. Cohelan, Esq. (SBN 60827)
tcohelan@ckslaw.com
Isam C. Khoury, Esq. (SBN 58759)
ikhoury@ckslaw.com
605 C Street, Suite 200
San Diego, CA 92101
Telephone: (619) 595-3001/Facsimile: (619) 595-3000

**KEEGAN & BAKER, LLP**
Patrick N. Keegan, Esq. (SBN 167698)
pkeegan@keeganbaker.com
2292 Faraday Avenue, Suite 100
Carlsbad, CA 92008
Telephone: (760) 929-9303/Facsimile: (760) 929-9260

Attorneys for Plaintiff JOHN DEDDEH

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DEDDEH, individually and on behalf of class of similarly situated individuals,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>GANNETT CO., INC.;<br><br>　　　　Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES**<br><br><br>**JURY TRIAL DEMANDED** |

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

Plaintiff John Deddeh, on behalf of himself and a class of similarly-situated individuals as defined below, and based on personal knowledge where applicable, information and belief, and investigation by counsel, alleges the following against Defendant Gannett Co., Inc.

## **INTRODUCTION**

1.    This class action lawsuit arises out of Defendant's policy and practice of embedding and using various trackers on Defendant's USA Today website, www.usatoday.com, to (1) install and store third-party tracker cookies on website users' browsers and (2) collect website users' personally identifying and addressing information, such as IP addresses[1], that the USA Today website surreptitiously discloses and shares with the third-party trackers without users' knowledge, authorization, or consent.

2.    Defendant Gannett Co., Inc. ("Defendant" or "Gannett") is an American mass media holding company that owns and publishes various brands that deliver journalism, compelling content, events, experiences, and digital marketing business solutions. Gannett's portfolio includes hundreds of brands and local media outlets across the United States and United Kingdom, including USA Today, The Arizona Republic, Golfweek, Newsquest Media Group, and many others.

3.    Founded in 1980 and launched in 1982, USA Today is a newspaper and news broadcasting company that operates from Gannett's corporate headquarters in New York. USA Today covers breaking news, politics, sports, entertainment, money, wellness and more. Its newspaper is printed at 37 sites across the United States and at five additional sites internationally. Defendant also owns and operates the www.usatoday.com website (the "USA Today website"), which provides breaking news and in-depth coverage of U.S. and national news.

4.    Plaintiff and Class Members who visit the USA Today website expect that their personally identifying information, including their IP addresses, will remain private and confined to their use of the USA Today website. Plaintiff and Class Members have a reasonable

---

[1]  IP addresses have been classified by the United States Department of Health and Human Services ("HHS") as personally identifying information. *Use of Online Tracking Technologies by HIPAA Covered Entities and Business Associates*, U.S. Department of Health and Human Services (Dec. 1, 2022), https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaa-online-tracking/index.html

expectation that their accessing of and interactions with the USA Today website will not be shared with any third parties or sold for advertising purposes.

5.    Unbeknownst to individuals entering and viewing the USA Today website, third-party trackers are embedded into Defendant's website. Through that embedded tracking technology, while Plaintiff and Class Members were and are accessing and interacting with the USA Today website, Defendant (1) installed and stored and continues to install and store third-party tracker cookies on users' browsers and (2) captured and continues to capture USA Today website users' IP addresses and other identifying information. All of this happens the moment users enter the USA Today website and without any further action required by or requested of the users.

6.    Plaintiff is informed and believes and, on that ground, alleges that Defendant surreptitiously shares identifying data, including addressing information such as IP addresses, with the third-party trackers for advertising and analytics-related purposes. Defendant does so without obtaining USA Today website users' authorization or consent and without a court order.

7.    Defendant's unauthorized (1) installation of third-party tracker cookies on users' web browsers and (2) collection and disclosure to third parties of Plaintiff's and Class Members' personally identifying and addressing information, without consent or adequate notification to Plaintiff and Class Members, are invasions of Plaintiff's and Class Members' privacy.

8.    Defendant's actions also violate various laws, including the California Computer Data Access and Fraud Act, Cal. Penal Code § 502 ("CDAFA"); the California Invasion of Privacy Act, Cal. Penal Code §§ 630, *et seq*. ("CIPA"); and the right to privacy under Article 1, § 1, of the California Constitution, which includes privacy as one of six fundamental rights of all Californians.

## **PARTIES**

**A.    Plaintiff John Deddeh**

9.    Plaintiff is a natural person and a resident of California. While physically

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

present in California, Plaintiff used an internet browser on his computer and on his cellular phone to access Defendant's USA Today website on several occasions during the last three years to browse news headlines and to read articles.

10.    At no time when Plaintiff entered the USA Today website and viewed its content did he authorize Defendant to install or consent to Defendant installing third-party tracker cookies on his internet browser or computer. Plaintiff also did not consent to Defendant sharing and selling his IP addresses and other personally identifying information with or to third-party trackers. Further, because Defendant did not provide notice or request permission, Plaintiff was unaware of and had no opportunity to opt out of that unauthorized disclosure of his data.

**B.    Defendant Gannett Co., Inc., and the USA Today Website**

11.    Defendant Gannett Co., Inc. is a corporation organized under the laws of the State of Delaware with its headquarters and principal place of business in New York, New York. Defendant is registered to do business in California with the California Secretary of State, has California agent for service of process, maintains offices, staff, and operations in California, continuously markets and sells its USA Today products in California, and operates an interactive website that places trackers on California browsers. Additionally, Defendant operates eight California daily news publications to promote local news, ads, public notices, and USA Today content. Defendant systematically and continuously does business in California and with California residents.

12.    Defendant currently owns and operates the www.usatoday.com website, which publishes breaking news, politics, sports, entertainment, money, wellness and more from across the country and around the world.

13.    Defendant's USA Today website fails to put visitors on notice of Defendant's use of website tracking technology, including its use of third-party trackers. Upon information and belief, Plaintiff alleges that third-party trackers allow and enable companies like and including Defendant to sell advertising space on their websites by using the tracking technology to receive, store, and analyze information collected from website visitors.

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

14.    The USA Today website also failed and fails to disclose the selling and sharing of personally identifying information, including IP addresses and other addressing information, to and with unauthorized third party-trackers for advertising and other purposes.

## JURISDICTION AND VENUE

15.    This Court has subject matter jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). Specifically, this action satisfies all requirements for federal jurisdiction under CAFA since the allegations in this Complaint identify a putative class of more than 100 members, establish the minimum diversity of citizenship required under CAFA, and put in controversy more than $5 million in the aggregate for the entire class, exclusive of interest and costs. 28 U.S.C. § 1332(d), (d)(5), and § 1453(b).

16.    This Court has personal jurisdiction over the parties because Defendant has sufficient minimum contacts with this State in that it operates and markets its services and products throughout the State. Further, a substantial part of the events and conduct giving rise to Plaintiff's claims occurred in the State of California, including Plaintiff's accessing of and interactions with the USA Today website, Defendant's installing of third-party tracker cookies on California users' web browsers, and Defendant's collecting and unauthorized sharing of Plaintiff's and Class Members' personally identifying and addressing information. Plaintiff's rights were violated in the State of California and those violations arose out of his contact with Defendant from and within California.

17.    Venue is proper in this Court because on information and belief, Defendant Gannett Co., Inc. is a foreign business entity and had failed to designate a principal place of business in California with the office of the Secretary of State as of the date this Complaint was filed.

18.    Article III standing is met when a plaintiff "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 337, 338 (2016).

19.    Plaintiff meets the "injury in fact" requirement because his invasion of privacy is a "concrete and particularized" injury. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190,

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

2204 (2021) ("Various intangible harms can also be concrete [including] . . . disclosure of private information"); *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d 589, 596 (9th Cir. 2020) (holding that Facebook's tracking of browsing histories that were sold to advertisers was an "invasion of [a] legally protected interest that is concrete and particularized."). Plaintiff alleges that he was personally injured when Defendant impermissibly obtained Plaintiff's personal information. It is black-letter law that such allegations are sufficient to confer Article III standing. *See, e.g., Mastel v. Miniclip SA*, 2021 WL 2983198, at *6 (E.D. Cal. July 15, 2021) (collection of "personal information without the plaintiff's consent involve a sufficiently 'concrete' injury"); *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F.Supp.3d 767, 784 (N.D. Cal. 2019) (dissemination to third parties of plaintiffs' personal information is "sufficient to confer [Article III] standing."). Separate from an invasion-of-privacy harm, Plaintiff also alleges economic harm sufficient for Article III standing by alleging user data carries financial value, citing a study that values user data at a quantifiable number; and allegations that Defendant profited from the data. The Ninth Circuit has found that such allegations are sufficient to establish Article III standing under a theory of economic harm. *See Facebook Tracking*, 956 F.3d at 600. Further, "[u]nder California law, this stake in unjustly earned profits exists regardless of whether an individual planned to sell his or her data or whether the individual's data is made less valuable." *Facebook Tracking*, 956 F.3d at 600. Plaintiffs' injury is "fairly traceable" to Defendant's challenged conduct, *Spokeo*, 578 U.S. at 338, because Plaintiff's private information was acquired by Defendant through the use of third-party trackers are embedded into Defendant's website. Thus, Plaintiff's injury thus occurred at the moment his information was improperly acquired by Defendant. Plaintiff meets the redressability element because courts have consistently recognized that violation of privacy rights can be redressed by an award of damages or injunctive relief. *See Facebook Privacy*, 402 F.Supp.3d at 784 ("[T]he Ninth Circuit has repeatedly explained that intangible privacy injuries can be redressed in the federal courts."); *Jewel v. Nat'l Sec. Agency*, 673 F.3d 902, 912 (9th Cir. 2011) (similar). Additionally, the injunctive relief Plaintiff seeks includes terminating all downstream distributions of such personal data illegally collected, which would redress future

harms suffered by Plaintiff and the Class.

20.    Plaintiff adequately alleges statutory standing to bring California Invasion of Privacy Act ("CIPA") claim against the Defendant website owner arising from website's downloading of software "trackers" onto Plaintiff's web browser, constituting unauthorized "pen registers" under CIPA, where Plaintiff alleges that collection of his internet protocol ("IP") addresses through the trackers allowed third parties to obtain personally identifying, non-anonymized information, that IP addresses revealed geographical location and other personal information sufficient for third parties to conduct targeted advertising, that Plaintiff was unaware of the tracking, and that Plaintiff did not consent to it. *Shah v. Fandom, Inc*., 2024 WL 4539577 (N.D. Cal., Oct. 21, 2024, No. 24-CV-01062-RFL).

## FACTUAL ALLEGATIONS COMMON TO THE CLASS

### A.    Website Tracking Technology

21.    Trackers are companies that collect information about internet users as those users browse the web. Trackers use cookies, scripts or pixels inserted by publishers or advertisers.  Tracker profiling is the process of linking data from different sites to build profiles of individual internet users based on their browsing history, to place those internet users in groups, and to sell those persons' profiles and that data to third parties for targeted advertising.

22.    There is a broad range of online technologies that track and monitor internet-based interactions and communications. Four identifier tools commonly used are (i) website cookies, (ii) tracking pixels, (iii) digital fingerprinting, and (iv) software development kits.

23.    A website cookie refers to a small text file that a website server creates and transmits to a web browser (e.g., Google Chrome or Safari). The receiving web browser then installs and stores the file in a particular directory on an individual's computer, phone, or other device.[2] Essentially, when a website user attempts to access a webpage, the user's browser transmits a communication to the website's server requesting that the server display the website's content for the browser to load. While providing the requested content to the user, the website's server also provides the cookies that it would like the user's browser to install and

---

[2]  See Sara J. Nguyen, *What Are Internet Cookies and How Are They Used?* All About Cookies (Jul. 28, 2023), https://allaboutcookies.org/what-is-a-cookie.

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

1    retain.

2        24.    Website cookies contain information that identifies the domain name of the

3    webserver that wrote the cookie (e.g., www.hulu.com or www.facebook.com). Cookies also

4    have information about the user's interaction with a website, such as how the website should be

5    displayed, how many times a user has visited the website, what pages the user visited, and

6    authentication information. In addition to a unique identifier and a site name, website cookies

7    also can include personally identifiable information such as a user's name, address, email

8    address or phone number if that information was provided to a website.

9        25.    A first-party cookie is implemented by the website the user accesses. The

10    website uses its cookies for authentication, monitoring user sessions, and collecting analytical

11    data. A third-party cookie, also called an "advertising cookie" or "tracker cookie," is a cookie

12    that belongs to a domain other than the one being displayed to the user in the user's browser.

13    The key differences between the first-party and third-party cookies are who sets them (i.e., a

14    website display host or a third party), whether and how they can be blocked by a web browser,

15    and the availability of the cookie. A third-party advertising or tracker cookie is available and

16    accessible on any website that loads the third-party server's code, not just on the host website

17    that the user is trying to access. Third-party cookies typically are used for cross-site tracking,

18    retargeting, and ad-serving.

19        26.    A pixel, also known as a "tracking pixel," "web bug," "clear GIF" or "web

20    beacon," is similar to a website cookie. It is a small, almost invisible image (pixel) embedded

21    in a website or an email to track a user's activities. This data often includes the user's operating

22    system, the type of website or email used, the time at which the website was accessed, the

23    user's IP address, and whether there are cookies that previously have been set by the server

24    hosting the pixel image.[3]

25        27.    "Digital fingerprinting" refers to device fingerprinting and browser

26    fingerprinting, both of which send information to the website server to help ensure that a

27    website is displaying content and operating in accordance with its specifications. Although a

28    ---
[3]  See Patti Croft & Catherine McNally, *What Is a Web Beacon and Why Should You Care?* All About Cookies
(Sept. 26, 2023), https://allaboutcookies.org/what-is-a-web-beacon

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

browser or device does not usually transmit personal information about a user, most fingerprinting is performed via a third-party tracker, which can track an individual across multiple sites and form a profile of the user.[4]

28.    A software development kit ("SDK") is a set of computer programs and similar tools that developers and engineers can leverage to build applications for specific platforms. The SDK often includes, among other tools, libraries, application programming interfaces, instructions, guides, directions, and tutorials.[5] SDKs also may have embedded code that allows them to intercept personal data and other information from application users surreptitiously. That data and information can include geolocation data, usernames and communications derived from other SDK applications installed on a user's device, and a user's activities within an application after installation.

29.    All of the information and data captured and collected by third-party trackers, regardless of the tool used, is capable of being sold and used for marketing and advertising purposes.

**B.    Internet Protocol Addresses ("IP Addresses")**

30.    One important piece of identifying information collected by third-party trackers is a website user's IP address. An IP address is a unique identifier for a device and is written as four sets of numerals separated by decimal points (e.g., 123.145.167.189). The first two sets of numerals identify the device's network. The second two sets of numerals identify the specific device itself. The IP address enables a device to communicate with another device, such as a computer's web browser communicating with a website's server.

31.    Similar to a telephone number for a person, an IP address is a unique numerical code associated with a specific internet-connected device on a computer network. The IP addresses identify all of the devices accessing a certain network at any given time.

///

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

---

[4]  See Anokhy Desai, *The Half-Baked Future of Cookies and Other Tracking Technologies*, IAPP (July 2023), https://iapp.org/resources/article/future-of-cookies-tracking-technologies/

[5]  *What Is an SDK?* Software Development Kits Explained, Okta, Inc. (June 30, 2022), https://www.okta.com/identify-101/what-is-an-sdk.

32.    Importantly from a privacy perspective, an IP address contains geographical location information from which the state, city and zip code of a specific device can be determined.  Given the information that it can and does reveal, an IP address is considered personally identifiable information and is subject to HIPAA protection.[6]

33.    Being able to know a website user's IP address, and therefore the user's geographic location, provides "a level of specificity previously unfound in marketing."[7] An IP address allows advertisers to target customers by countries, cities, neighborhoods, and postal codes.[8] Even more specifically, it allows advertisers to target specific households, businesses, and even individuals with ads that are relevant to their interests.[9]

34.    Indeed, because it enables companies to use an IP address to identify individuals personally, IP targeting is one of the most successful marketing techniques that companies can employ to spread the word about a product or service.[10] By targeting specific households or businesses, a company can avoid wasting money on ads that are unlikely to be seen by their target audience and instead can reach their target audience with far greater precision.[11] Additionally, by analyzing data regarding which households or businesses are responding to their ads, IP address targeting can help businesses improve their overall marketing strategies and refine their marketing efforts.[12]

35.    As alleged below, Defendant installed and continues to install third-party tracker cookies on USA Today website users' browsers. Those trackers have collected and continue to collect identifying and addressing information about Plaintiff and Class Members, including

---

[6] *See* 45 C.F.R. § 164.514(b)(2)(i)(O).

[7] *IP Targeting: Understanding This Essential Marketing Tool*, AccuData, https://www.accudata.com/blog/ip-targeting/ (last visited June 17, 2024).

[8] *Location-based Targeting That Puts You in Control*, Choozle, https://choozle.com/geotargeting-strategies/ (last visited June 17, 2024).

[9] Herbert Williams, *The Benefits of IP Address Targeting for Local Businesses*, LinkedIn (Nov. 29, 2023), https://www.linkedin.com/pulse/benefits-ip-address-targeting-local-businesses-herbert-williams-z7bhf/

[10] Trey Titone, *The future of IP address as an advertising identifier*, Ad Tech Explained (May 16, 2022), https://adtechexplained.com/the-future-of-ip-address-as-an-advertising-identifier/

[11] Herbert Williams, *The Benefits of IP Address Targeting for Local Businesses*, LinkedIn (Nov. 29, 2023), https://www.linkedin.com/pulse/benefits-ip-address-targeting-local-businesses- herbert-williams-z7bhf/

[12] *Id.*

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

1   their IP addresses, without a court order and without those individuals' consent.

2   **C.     Defendant's Use of Third-Party Trackers on the USA Today Website**

3        36.     Defendant has embedded and implemented several third-party trackers on the

4   USA Today website, including but not limited to (i) Taboola Tracker, (ii) Amobee Tracker and

5   (iii) Adnx Tracker (the "trackers"). By installing these trackers and their corresponding

6   tracking cookies, Defendant can sell advertising space on the USA Today website. That enables

7   Defendant to monetize its website further and to maximize its revenue by collecting and

8   disclosing user information.

9        37.     Taboola Tracker is developed by software company Taboola Inc., which

10  leverages data analytics to align digital content with user preferences across its network of

11  publisher websites. As a content recommendation platform, the Taboola Tracker is designed to

12  collect user data to optimize content suggestions, enhancing both user experience and content

13  monetization for publishers.

14       38.     When a website user first accesses and enters the USA Today website, the user's

15  browser sends an HTTP request[13] to Defendant's website server. Defendant's website server

16  sends an HTTP response with directions to load the webpage content and to install the Taboola

17  Tracker on the user's browser. The Taboola Tracker stores a website cookie in the user's

18  browser cache and uses that third-party tracker cookie to collect and share that user's IP

19  address with Taboola every time the user interacts with the USA Today website. See Figure 1,

20  identifying Taboola, www.usatoday.com, and the user's IP address (45.132.xxx.xxx).

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  _____

[13]  HTTP stands for "HyperText Transfer Protocol." It is the computer communication protocol used for most communication on the world wide web.

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

Class Action Complaint

**Figure 1:**



39.     This entire process takes place behind the scenes in less than a second. Thus, the Taboola Tracker cookie appears the moment the user enters the USA Today website, and it is installed without any further action or consent required of the user.

40.     Further, each time a user revisits the USA Today website, the Taboola Tracker identifies that user and sends the stored website cookie, including the user's IP address, back to Taboola. Even if a user clears the cookies from the user's browser, it makes no difference: the next time that user visits the USA Today website, the Taboola Tracker re-installs the tracker cookie, resets the tracking process, and resumes transmission of the user's IP address to Taboola on future visits.

41.     Taboola collects IP addresses to allow it to ascertain a user's location and target that user with advertisements tailored to that specific location. According to its website, Taboola uses its "unique data about people's interests and information consumption to recommend the right content to the right person at the right time."[14] Taboola assists advertisers with targeting their campaigns by location, time, browser type, connection type, audience segments, and more.[15]

42.     In addition to the Taboola Tracker, Defendant also embeds the Amobee Tracker on its USA Today website. Like the Taboola Tracker, the Amobee Tracker is installed the

---

[14]  *How Taboola Works, Taboola Help Center*, https://help.taboola.com/hc/en- us/articles/115006597307-How-Taboola-Works (last visited June 17, 2024).

[15]  *Id.*

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

moment a user accesses the USA Today website, all without any notice to or request for permission from the user.

43.    Amobee is a digital marketing technology company that delivers a broad spectrum of advertising solutions aimed at helping brands, agencies, and publishers navigate the digital landscape. With an ad-serving platform that integrates across various channels such as digital, social, mobile, and video, Amobee delivers targeted advertising content to users based on their browsing habits and other collected data, including their IP addresses. Amobee utilizes HTTP requests and responses, along with cookies and IP addresses, to track and deliver personalized ads to users on host sites like USA Today.

44.    Specifically, when a user visits the USA Today website, an HTTP request is sent to Amobee's servers, which includes the user's IP address and allows Amobee to identify the user's geographic location. Amobee's servers then leverage the information contained within the user's HTTP request to respond with targeted ads tailored to the user.

45.    Amobee installs third-party tracker cookies on the user's browser during this process. Those cookies, which also store information linked to the user's browsing behavior, enable Amobee to recognize the user on subsequent visits to USA Today or to other websites within Amobee's advertising network and thereby leverage the user's personal browsing preferences. See Figure 2, identifying Amobee, www.usatoday.com, and the user's IP address (45.132.xxx.xxx).[16]

///

///

///

///

////

///

////

---

[16]    The host name "presentation-pdx1.turn.com" signifies the presence of the Amobee tracker. Amobee is the name of the advertising platform, but its tracking cookies use the "turn.com" domain. See https://www.netify.ai/resources/domains/turn.com.

Class Action Complaint

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

**Figure 2:**



46. Even if the Amobee Tracker cookies are cleared from the user's browser, the Amobee Tracker is re-installed automatically on subsequent visits to USA Today. The tracking cycle restarts, ensuring that Amobee consistently receives the user's IP address and browsing preferences with every website interaction. This mechanism facilitates a cycle of ad targeting and tracking and increases the relevancy and effectiveness of ads presented by Amobee to users across the web.

47. The third tracker embedded in Defendant's USA Today website is developed by software company Xandr, which Microsoft acquired in 2021. Xandr operates as an advanced advertising company that claims to provide a comprehensive platform for buying and selling consumer-centric digital advertising. The platform, which includes programmatic advertising, data analytics, and cross-screen media solutions, aims to improve the efficiency and effectiveness of advertising across various channels by leveraging data and technology.

48. Like other third-party trackers, Xandr allows companies like Defendant to sell advertising space on their websites by using the Adnx Tracker to receive, store and analyze information collected from website visitors. The Adnx Tracker is installed and stored on the user's browser the instant the user enters the USA Today website. The third-party tracker

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

cookie then sends the user's IP address to Xandr each and every time the user interacts with the

USA Today website. See Figure 3, identifying [Xandr, www.usatoday.com, and the user's IP

address (45.132.XXX).

**Figure 3:**



49.     Each of the three trackers embedded on Defendant's USA Today website (1)

installs a third-party tracker cookie on users' browsers and (2) captures, collects, and shares

with undisclosed third parties USA Today website users' personally identifying and addressing

information, including the users' IP addresses, all without users' knowledge or consent.

50.     Notably, upon information and belief, the trackers collect IP addresses that can

be used to ascertain a user's exact location, potentially with specific latitude-longitude

coordinates and a zip code. That information can be used by Defendant and third parties to

analyze the USA Today website data and conduct targeted advertising based on a user's

location as discussed above.

51.     Further, each of the three trackers embedded on Defendant's USA Today

website re-installs its tracker cookies every time a user visits the website. That happens even if

the user previously cleared the cookies from his or her web browser cache. As a result, USA

Today website users cannot escape the unauthorized sharing of their personally identifying and

addressing information with third-parties Taboola, Amobee, and Xandr.

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

**D.      Plaintiff and Class Members Did Not Consent to Defendant's Disclosure of Their Personally Identifying and Addressing Information, and They Have a Reasonable Expectation of Privacy in Their User Data**

52.      Defendant does not ask its USA Today website visitors, including Plaintiff, whether they consent to having their personally identifying and addressing information disclosed to and used by third parties like Taboola, Amobee, and Xandr. When a website user accesses and enters the USA Today website, there is no pop-up window or other notification to inform users that Defendant is using website tracking technology or installing third-party tracker cookies.

53.      Additionally, the third-party trackers are incorporated seamlessly – and, to users, invisibly – in the background on the USA Today website. That seamless and invisible incorporation gave and gives Plaintiff and Class Members no way to know that Defendant was collecting their personally identifying information and IP addresses and secretly sharing them with undisclosed third parties.

54.      Further, although the USA Today website does have a Privacy Policy containing some disclosures about how information is collected and shared, that policy can be viewed only after scrolling through all of the website content to the very bottom of the webpage. Thus, Defendant's policies and notices would be seen, if at all, only long after the third-party trackers and cookies had been installed on users' web browsers.

55.      In addition to its hard-to-see location, the hyperlink to access the Privacy Policy is written in small, inconspicuous font and is listed among many other links at the bottom of the page.

56.      Unlike first-party cookies that may be necessary to view a webpage, third-party tracker cookies are not necessary. Moreover, they (1) simultaneously communicate information to an external server as a user navigates a website; (2) track users across devices, meaning that a user's actions on multiple devices all will be included in the information stored regarding that user; (3) are not easily disabled by users; and (4) create a record of all of the information that users provide to and/or receive from the website.

///

Class Action Complaint

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

57.    Because they were unaware of Defendant's use of third-party trackers and tracking cookies, Plaintiff and Class Members could not and did not consent to the collection, storage, and use of their personally identifying and addressing information by undisclosed third parties such as Taboola, Amobee, and Xandr.

58.    Plaintiff and Class Members had and have a reasonable expectation of privacy in their interactions with the USA Today website and their user data, especially their personally identifying information. This is even truer of Plaintiff's and Class Members' IP addresses, which contain geolocation data that can be used to identify, track and target individuals in a very specific way.

59.    Privacy studies, such as those conducted by the Pew Research Center, show that most Americans are concerned about how data is collected about them.[17] Those privacy polls also reflect that Americans consider one of the most important privacy rights to be the need for an individual's affirmative consent before a company collects and shares data regarding that customer or other individual.

60.    Indeed, according to Consumer Reports, more than 90% of Americans believe that more should be done to ensure that companies protect consumers' privacy. Further, a supermajority of Americans – 64% – believe that companies should be prohibited from sharing data with third parties, while 63% of Americans want a federal law requiring companies to obtain a consumer's permission before sharing the consumer's information. To that end, 60% of Americans believe that companies should be required to be more transparent about their privacy policies so that consumers can make more informed choices.[18]

61.    Users act in a manner that is consistent with those preferences. During a rollout of new iPhone operating software, for example, 94% of U.S. users who were asked for clear,

---

[17] Brooke Auxier et al., *Americans and Privacy: Concerned, Confused and Feeling Lack of Control Over Their Personal Information*, Pew Research Center (Nov. 15, 2019), https://www.pewresearch.org/internet/2019/11/15/americans-and-privacy-concerned-confused-and-feeling-lack-of-control-over-their-personal-information/

[18] Benjamin Moskowitz et al., *Privacy Front & Center: Meeting the Commercial Opportunity to Support Consumer Rights*, Consumer Reports in collaboration with Omidyar Network (Fall 2020), https://thedigitalstandard.org/downloads/CR_PrivacyFrontAndCenter_102020_vf.pdf

affirmative consent before allowing companies to track them chose not to share their data.[19]

62.    Defendant's unauthorized (1) installation of third-party tracker cookies on Plaintiff's and Class Members' web browsers and (2) collection and disclosure of Plaintiff's and Class Members' personally identifying and addressing information to undisclosed third parties, without consent or adequate notification, are invasions of Plaintiff's and Class Members' privacy.

63.    Plaintiff and Class Members have suffered injuries in the form of (i) invasion of privacy; (ii) statutory damages; (iii) the continued and ongoing risk to their personally identifying information that, once out, cannot be restored to its previous level of privacy; and (iv) the continued and ongoing risk of harassment, spam, and targeted advertisements enabled by the USA Today website.

## CLASS ACTION ALLEGATIONS

64.    Plaintiff brings this action under Federal Rules of Civil Procedure 23 on behalf of himself and a class (the "USA Today Website Class" or "the Class") defined as follows:

> All California residents who, while located within California at any time during the applicable limitations period preceding the filing of the Complaint in this matter, accessed and viewed the USA Today website and had their IP addresses collected by and disclosed to the third-party trackers embedded in the USA Today website.

65.    Excluded from the USA Today Website Class are website users who (i) registered for the USA Today smartphone application and/or (ii) subscribed to receive the USA Today eNewspaper. Employees of Defendant and employees of Defendant's parents, subsidiaries, and corporate affiliates also are excluded from the Class. Plaintiff reserves the right to amend or modify the class definition and/or to add sub-classes or limitations to particular issues, where appropriate, based upon subsequently discovered information.

66.    This action properly may be maintained as a class action under the Federal Rules of Civil Procedure because (1) there is a well-defined community of interest in the litigation, (2) common questions of law and fact predominate over individual issues, and (3) the

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

---

[19] See https://www.wired.co.uk/article/apple-ios14-facebook ("According to Flurry Analytics, 85 per cent of worldwide users clicked 'ask app not to track' when prompted, with the proportion rising to 94 per cent in the US.").

1    proposed Class is ascertainable.

2    **Numerosity**

3        67.    The USA Today Website Class that Plaintiff seeks to represent contains

4    numerous members and is clearly ascertainable including, without limitation, by using

5    Defendant's records and/or third-party trackers' records to determine the size of the Class and

6    to determine the identities of individual Class Members.

7        68.    Based on information and belief, the USA Today Website Class consists of at

8    least 75 individuals. The Class is so numerous that joinder of all members is impracticable.

9    **Typicality**

10       69.    Plaintiff's claims are typical of the claims of all the other members of the USA

11   Today Website Class, as Plaintiff now suffers and has suffered from the same violations of the

12   law as other putative Class Members. Plaintiff's claims and the Class Members' claims are

13   based on the same legal theories and arise from the same unlawful conduct, resulting in the

14   same injury to Plaintiff and all of the other Class Members.

15   **Adequacy**

16       70.    Plaintiff will fairly and adequately represent and protect the interests of the other

17   members of the Class. Plaintiff has retained competent counsel with substantial experience in

18   prosecuting complex litigation and class actions. Plaintiff and his counsel are committed to

19   prosecuting this action vigorously on behalf of the USA Today Website Class Members and

20   have the financial resources to do so. Neither Plaintiff nor his counsel have any interests that

21   are adverse to those of the other USA Today Website Class Members.

22   **Commonality and Predominance**

23       71.    By its unlawful actions, Defendant has violated Plaintiff's and the Class

24   Members' rights under the CDAFA, the CIPA, and the California Constitution. The questions

25   raised are, therefore, of common or general interest to the Class Members, who have a well-

26   defined community of interest in the questions of law and fact presented in this Complaint.

27       72.    This action involves common questions of law and fact that predominate over

28   any questions affecting only individual Class Members. Those common questions of law and

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

Class Action Complaint

fact include, without limitation, the following:

(a) Whether Plaintiff and Class Members had a reasonable expectation of privacy when they accessed and visited the USA Today website;

(b) Whether Defendant knowingly and without permission accessed Plaintiff's and Class Members' computers;

(c) Whether Defendant knowingly and without permission altered, damaged, deleted, destroyed, or otherwise used any data from Plaintiff's and Class Members' computers;

(d) Whether Defendant knowingly and without permission took, copied, or made use of any data from Plaintiff's and Class Members' computers;

(e) Whether Defendant knowingly and without permission added, altered, damaged, deleted, or destroyed any data from Plaintiff's and Class Members' computers;

(f) Whether Plaintiff and Class Members had a reasonable expectation of privacy in their personally identifying information, including IP addresses, when they accessed and visited the USA Today website;

(g) Whether each of the third-party trackers embedded in the USA Today website is a "pen register" under California Penal Code § 638.50(b);

(h) Whether Defendant has or had a policy or practice of collecting and sharing personally identifying and addressing information collected on the USA Today website including, without limitation, IP addresses, with third-party trackers and/or other third parties;

(i) Whether Defendant has or had a policy or practice of not disclosing to USA Today website users that it would collect and share their personally identifying and addressing information, including IP addresses, with third-party trackers and/or other third parties;

(j) Whether Defendant has or had a policy or practice of not obtaining USA Today website users' prior consent to collect and share personally identifying and addressing information, including IP addresses, with third-party trackers and/or other third parties;

(k) Whether Defendant sought or obtained a court order for its use of the third-party trackers;

(l) Whether Defendant's conduct invaded Plaintiff's and Class Members' privacy;

(m) Whether Defendant's acts and practices violate or violated California's Computer Data Access and Fraud Act, Cal. Penal Code § 502;

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

- 19 -

Class Action Complaint

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

(n) Whether Defendant's acts and practices violate or violated the California Invasion of Privacy Act, Cal. Penal Code § 638.51(a);

(o) Whether Defendant's acts and practices violate or violated the California Constitution or individual rights arising under the California Constitution; and

(p) Whether Plaintiff and Class Members are entitled to actual, statutory, nominal, and/or other forms of damages, restitution, and other relief.

**Superiority**

73.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all of the members of the Class is impracticable and because questions of law and fact common to the USA Today Website Class predominate over any questions affecting only individual members of the Class. Even if every individual member of the Class could afford individual litigation, the court system could not. It would be unduly burdensome to the courts if individual litigation of the numerous cases were to be required. Individualized litigation also would present the potential for varying, inconsistent or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the conduct of this action as a class action with respect to some or all of the issues will present fewer management difficulties, conserve the resources of the court system and the parties, and protect the rights of each member of the USA Today Website Class. Further, it will prevent the very real harm that would be suffered by numerous members of the putative Class who simply will be unable to enforce individual claims of this size on their own, and by Defendant's competitors, who will be placed at a competitive disadvantage as their punishment for obeying the law. Plaintiff anticipates no difficulty in the management of this case as a class action.

74.    The prosecution of separate actions by individual members of the USA Today Website Class would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other members of the Class who are not parties to those adjudications or that would substantially impair or impede the ability of those non-party members of the Class to protect their interests.

75.    The prosecution of individual actions by members of the USA Today Website Class also would run the risk of establishing inconsistent standards of conduct for Defendant.

**FIRST CAUSE OF ACTION**
**Violation of the California Computer Data Access and Fraud Act**
**California Penal Code § 502**
(On Behalf of Plaintiff and the Class)

76.    Plaintiff incorporates each allegation set forth above as if fully set forth herein and further alleges as follows.

77.    The California Legislature enacted the CDAFA with the intent to "expand the degree of protection afforded to individuals, businesses, and governmental agencies from tampering, interference, damage, and unauthorized access to lawfully created computer data and computer systems." Cal. Penal Code § 502(a).

78.    The Legislature further declared that "protection of the integrity of all types and forms of lawfully created computers, computer systems, and computer data is vital to the protection of the privacy of individuals as well as to the well-being of financial institutions, business concerns, governmental agencies, and others within this state that lawfully utilize those computers, computer systems, and data." Cal. Penal Code § 502(a).

79.    For purposes of the statute, a number of definitions were provided. The term "access" means to "gain entry to, instruct, cause input to, cause output from, cause data processing with, or communicate with, the logical, arithmetical, or memory function resources of a computer, computer system, or computer network." Cal. Penal Code § 502(b)(1).

80.    The term "computer program or software" is defined as "a set of instructions or statements, and related data, that when executed in actual or modified form, cause a computer, computer system, or computer network to perform specified functions." Cal. Penal Code § 502(b)(3).

81.    The term "computer system" refers to "a device or collection of devices, including support devices and excluding calculators that are not programmable and capable of being used in conjunction with external files, one or more of which contain computer programs, electronic instructions, input data, and output data, that performs functions, including but not

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

1    limited to, logic, arithmetic, data storage and retrieval, communication, and control." Cal. Penal

2    Code § 502(b)(5).

3        82.    Plaintiff's and Class Members' web browsers used to access the USA Today

4    website are "computer software," and the computers on which Plaintiff and Class Members

5    used their web browsers constitute computers or "computer systems" within the scope of the

6    CDAFA.

7        83.    The statute also defines the term "data" to mean a "representation of

8    information, knowledge, facts, concepts, computer software, or computer programs or

9    instructions." The statute further provides that data may be in "any form, in storage media, or

10    as stored in the memory of the computer or in transit or presented on a display device." Cal.

11    Penal Code § 502(b)(8).

12        84.    As discussed above, a website cookie, including a third-party tracker cookie, and

13    an IP address both are "data" within the meaning of the statute.

14        85.    Under California Penal Code § 502(c)(1), it is unlawful knowingly to access and

15    without permission alter, damage, delete, destroy, or otherwise use any data, computer,

16    computer system, or computer network in order to…wrongfully control or obtain money,

17    property or data. Cal. Penal Code § 502(c)(1).

18        86.    The statute also makes it unlawful to access knowingly and without permission

19    take, copy, or make use of any data from a computer, computer system, or computer network.

20    Cal. Penal Code § 502(c)(2).

21        87.    The CDAFA further prohibits any person from knowingly accessing and without

22    permission adding, altering, damaging, or destroying any data, computer software, or computer

23    programs which reside or exist internal or external to a computer, computer system, or

24    computer network. Cal. Penal Code § 502(c)(4).

25        88.    Under subsections (6) and (7) of Penal Code § 502(c), a person also may not

26    knowingly and without permission (i) provide or assist in providing a means of accessing or (ii)

27    access or cause to be accessed any computer, computer system, or computer network. Cal.

28    Penal Code §§ 502(c)(6) and (7).

89.    Based on Defendant's unauthorized installation and storage of third-party tracker cookies on Plaintiff's and Class Members' web browsers, as alleged above, Defendant knowingly accessed and without permission altered and used Plaintiff's and Class Members' data and computer systems in violation of Penal Code § 502(c)(1).

90.    Similarly, the installation of those third-party tracker cookies violates subsection (c)(4) because Defendant added and altered data and computer software on Plaintiff's and Class Members' computers or computer systems. Cal. Penal Code § 502(c)(4).

91.    By installing third-party tracker cookies, Defendant also knowingly and without permission provided those trackers a means of accessing and/or caused to be accessed Plaintiff's and Class Members' computers, computer systems, and/or computer networks in violation of Penal Code §§ 502(c)(6) and (7).

92.    Further, Defendant's unauthorized collection and disclosure to undisclosed third parties of Plaintiff's and Class Members' personally identifying and addressing information violates Penal Code § 502(c)(2) because Defendant took and made use of data, including IP addresses, from Plaintiff's and Class Members' computers, computer systems, or computer networks.

93.    Plaintiff and Class Members are residents of California who used their computers, computer systems, and/or computer networks in California. Defendant accessed or caused to be accessed Plaintiff's and Class Members' data and other personally identifying information from within California.

94.    Defendant was unjustly enriched by accessing, acquiring, taking, and using Plaintiff's and Class Members' data and computer systems without their permission or consent, and using all of that identifying information to maximize revenue from selling advertising space on the USA Today website and for Defendant's own financial benefit. Defendant has been unjustly enriched in an amount to be determined at trial.

95.    As a direct and proximate result of Defendant's violations of the CDAFA, Plaintiff and Class Members have suffered damages. Under Penal Code § 502(e)(1), Plaintiff and Class Members are entitled to compensatory damages, injunctive relief, and other equitable

relief in an amount to be determined at trial.

96.    Plaintiff and Class Members also are entitled to an award of reasonable attorneys' fees and costs under Penal Code § 502(e)(2).

**SECOND CAUSE OF ACTION**
**Unlawful Use of a Pen Register or Trap and Trace Device**
**California Penal Code § 638.51**
(On Behalf of Plaintiff and the Class)

97.    Plaintiff incorporates each allegation set forth above as if fully set forth herein and further alleges as follows.

98.    The California Legislature enacted the California Invasion of Privacy Act, Cal. Penal Code §§ 630, *et seq.* ("CIPA"), to address "advances in science and technology [that] have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications" and declared "that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society." *Id.* § 630. CIPA is intended "to protect the right of privacy of the people of this state." *Id.*

99.    Although CIPA was enacted before the dawn of the Internet, the California Supreme Court "regularly reads statutes to apply to new technologies where such a reading would not conflict with the statutory scheme." *In re Google Inc.*, 2013 WL 5423918, at *21 (N.D. Cal. Sept. 26, 2013); *see also Greenley*, 2023 WL 4833466, at *15 (referencing CIPA's "expansive language" when finding that software was a "pen register"); *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *1 (9th Cir. May 31, 2022) ("Though written in terms of wiretapping, [CIPA] Section 631(a) applies to Internet communications."). This is consistent with the observation in *Matera v. Google Inc.* that, "when faced with two possible interpretations of CIPA, the California Supreme Court has construed CIPA in accordance with the interpretation that provides the greatest privacy protection." *Matera v. Google Inc.*, 2016 WL 8200619, at *19 (N.D. Cal. Aug. 12, 2016).

100.    Particularly pertinent here, California Penal Code § 638.51(a) makes it unlawful for a person to "install or use a pen register or a trap and trace device without first obtaining a

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

court order."

101.    A "pen register" is "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code § 638.50(b).

102.    A "trap and trace device" is a "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." Cal. Penal Code § 638.50(c).

103.    In essence, a "pen register" is a "device or process" that records outgoing information, while a "trap and trace device" is a "device or process" that records incoming information. For example, if a user sends an email, a "pen register" might record the email address from which the email was sent, the email address to which the email was sent, and the subject line – because this is the user's outgoing information. On the other hand, if that same user receives an email, a "trap and trace device" might record the email address from which that email was sent, the email address to which it was sent, and the subject line – because this is incoming information that is being sent to that same user.

104.    The three trackers embedded in the USA Today website – Taboola, Amobee, and Adnx – are "pen registers" because each of them is a device or process that captures and records outgoing addressing or signaling information from the electronic communications transmitted by Plaintiff's and Class Members' computers, computer systems, and computer networks as they are accessing and visiting the USA Today website.

105.    At all relevant times, Defendant installed and is installing each of the three pen register trackers on Plaintiff's and Class Members' web browsers and used the trackers to collect Plaintiff's and Class Members' outgoing IP addresses. IP addresses constitute addressing information and do not necessarily reveal any more about the underlying contents of the communication. *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1108 (9th Cir. 2014).

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

106.    Unaware of Defendant's installation and use of the third-party trackers as pen registers, Plaintiff and Class Members could not have provided and did not provide their prior consent to Defendant's installation or use of the third-party trackers or pen registers.

107.    Upon information and belief, Defendant was not authorized by any court order to use a pen register to track Plaintiff's and Class Members' location data and other identifying or addressing information.

108.    Defendant's conduct as described above violated California Penal Code § 638.51. As a result, Defendant is liable for the relief sought by Plaintiff and the USA Today Website Class. Under California Penal Code § 637.2, Plaintiff and Class Members are entitled to and seek statutory damages of $5,000 for each of Defendant's numerous CIPA violations.

**THIRD CAUSE OF ACTION**
**Invasion of Privacy**
**Violation of Art. 1, § 1, California Constitution**
(On Behalf of Plaintiff and the Class)

109.    Plaintiff incorporates each allegation set forth above as if fully set forth herein and further alleges as follows.

110.    "Privacy" is listed in Article I, Section 1, of the California Constitution as a fundamental right of all Californians. That section of the Constitution provides as follows: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy." Cal. Const. art. I, § 1.

111.    The right to privacy in California's Constitution creates a right of action against private entities such as Defendant. To state a claim for invasion of privacy under the California Constitution, a plaintiff must establish (1) a legally protected privacy interest; (2) a reasonable expectation of privacy; and (3) an intrusion so serious in nature, scope, and actual or potential impact as to constitute an egregious breach of social norms.

112.    Plaintiff and Class Members have a legally protected privacy interest in their personally identifying information and addressing information that are captured, without notice or consent, when they access and view the USA Today website. These privacy interests are

Class Action Complaint

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

recognized by the California Constitution, CDAFA, CIPA, HIPAA, and numerous other statutes.

113.    Plaintiff and Class Members had a reasonable expectation of privacy under the circumstances, as they could not reasonably have expected that Defendant would violate state and federal privacy laws. Plaintiff and Class Members were not aware of and could not reasonably have expected that Defendant would use website tracking technology and install third-party tracker cookies without notice and/or without obtaining consent. Those unauthorized trackers collected and transmitted to undisclosed third parties Plaintiff's and Class Members' personally identifying and addressing information, including their IP addresses, which contain geolocation data.

114.    Defendant's unauthorized (1) installation of third-party tracker cookies and (2) collection and disclosure to undisclosed third parties of Plaintiff's and Class Members' personally identifying and addressing information, all without consent or adequate notification to Plaintiff and Class Members, are invasions of Plaintiff's and Class Members' privacy.

115.    Defendant's conduct constituted a serious invasion of privacy that would be highly offensive to a reasonable person in that (i) the information disclosed by Defendant and shared with third-party trackers was personally identifying information protected by the California Constitution and numerous California and federal statutes; (ii) Defendant did not have authorization or consent to disclose that personally identifying and addressing information, including IP addresses, to any third-party tracker embedded in the USA Today website, and the trackers did not have authorization to collect and use that geolocation information; and (iii) the invasion deprived Plaintiff and Class Members of the ability to control the dissemination and circulation of that information, an ability that is considered a fundamental privacy right. Defendant's conduct constitutes a severe and egregious breach of social norms.

116.    As a direct and proximate result of Defendant's actions, Plaintiff and Class Members have had their privacy invaded and have sustained injury, including injury to their peace of mind.

117.    Plaintiff and USA Today Website Class Members seek appropriate relief for that injury, including but not limited to restitution, disgorgement of profits earned by Defendant because of, by way of or in connection with the intrusions upon Plaintiff's and Class Members' privacy, nominal damages, and all other equitable relief that will compensate Plaintiff and Class Members properly for the harm to their privacy interests.

118.    Plaintiff also seeks such other relief as the Court may deem just and proper.

## FOURTH CAUSE OF ACTION
### Unjust Enrichment
(On Behalf of Plaintiff and the Class)

119.    Plaintiff incorporates each allegation set forth above as if fully set forth herein and further allege as follows.

120.    Defendants received benefits from Plaintiff and Class Members and unjustly retained those benefits at their expense.

121.    Plaintiff and Class Members conferred a benefit upon Defendant in the form of valuable personal information and data that Defendant collected from Plaintiff and Class Members, without authorization and proper compensation. Defendant has collected, disclosed, and otherwise misused this information for its own gain, providing Defendant with economic, intangible, and other benefits, including substantial monetary compensation from third parties who received Plaintiff's and Class Members' personal information and data.

122.    Defendant unjustly retained those benefits at the expense of Plaintiff and Class Members because Defendant's conduct damaged Plaintiff and Class Members, all without providing any commensurate compensation to Plaintiff and Class Members.

123.    The benefits that Defendant derived from Plaintiff and Class Members rightly belong to Plaintiff and Class Members. It would be inequitable under unjust enrichment principles in California and every other state for Defendant to be permitted to retain any of the profit or other benefits they derived from the unfair and unconscionable methods, acts, and trade practices alleged in this Complaint.

124.    Defendant should be compelled to disgorge in a common fund for the benefit of Plaintiff and Class Members all unlawful or inequitable proceeds that Defendant received, and

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

1    such other relief as the Court may deem just and proper.

**FIFTH CAUSE OF ACTION**
**Violations of California's Unfair Competition Law**
**Cal. Bus. & Prof. Code §§ 17200, *et seq*.**
(On Behalf of Plaintiff and the Class)

125.    Plaintiff incorporates each allegation set forth above as if fully set forth herein and further allege as follows.

126.    Defendant's business acts and practices are "unlawful" under the California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*. ("UCL"), because, as alleged above, Defendant violated the California common law, California Constitution, and the other State and Federal statutes and causes of action described herein.

127.    Defendant's business acts and practices are "unfair" under the UCL. California has a strong public policy of protecting consumers' privacy interests, including protecting consumers' personal data. Defendant violated this public policy by, among other things, surreptitiously collecting, disclosing, and otherwise misusing Plaintiff' and Class Members' personal information and data without Plaintiff' and Class Members' consent. Defendant's conduct violates the policies of the statutes referenced herein.

128.    Defendant's business acts and practices are also "unfair" in that they are immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to consumers. The gravity of the harm of Defendant secretly collecting, disclosing, and otherwise misusing Plaintiff's and Class Members' personal information and data is significant, and there is no corresponding benefit resulting from such conduct. Finally, because Plaintiff and Class Members were completely unaware of Defendant's conduct, they could not have possibly avoided the harm.

129.    Defendant's violations were, and are, willful, deceptive, unfair, and unconscionable.

130.    Had Plaintiff and Class Members known that their information would be collected, and otherwise misused for Defendant's own benefit, they would not have used Defendant's website.

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

131.    Plaintiff and Class Members have a property interest in their sensitive personal data. By surreptitiously collecting and otherwise misusing Plaintiff' and Class Members' information, Defendant has taken property from Plaintiff and Class Members without providing just or any compensation.

132.    For these reasons, Plaintiff seeks restitution from Defendant on behalf of himself and Class Members; and injunctive relief in the form of a permanent injunction enjoining Defendant's unlawful and unfair business activities, including an injunction terminating all downstream distributions of Plaintiff's and the Class Members' personal data illegally collected; and any other equitable relief the Court deems proper.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and the Members of the Class, prays for the following relief:

a. An order certifying the USA Today Website Class, appointing Plaintiff John Deddeh as representative of the USA Today Website Class, and appointing counsel for Plaintiff as counsel for the USA Today Website Class;

b. An order declaring that Defendant's actions, as described above, violate California Penal Code § 502;

c. An order declaring that Defendant's actions, as described above, violate California Penal Code § 638.51;

d. An order declaring that Defendant's actions, as described above, violate Art. 1, § 1 of the California Constitution;

e. A judgment for and award of compensatory damages or other equitable relief under California Penal Code § 502(e)(1) to Plaintiff and each of the members of the USA Today Website Class;

f. A judgment for and award of statutory damages of $5,000 per violation of CIPA under California Penal Code § 637.2 to Plaintiff and each of the members of the USA Today Website Class;

g. A judgment for and award of restitution, disgorgement of profits, and nominal

damages to which Plaintiff and each of the members of the USA Today Website Class are entitled by law;

h. Payment of costs of the suit;

i. Payment of attorneys' fees under California Code of Civil Procedure § 1021.5 and Penal Code § 502(e)(2);

j. An award of pre- and post-judgment interest to the extent allowed by law; and

k. Such other and further relief as the Court may deem proper.

COHELAN KHOURY & SINGER

Dated: December 3, 2024      By:  _s/ Isam C. Khoury_
                                   Isam C. Khoury, Esq.
                             Attorneys for Plaintiff JOHN DEDDEH

## **DEMAND FOR JURY TRIAL**

Plaintiff and the Class hereby demand a jury trial on all causes of action and claims with respect to which they have a right to jury trial.

COHELAN KHOURY & SINGER

Dated: December 3, 2024      By:  _s/Isam C. Khoury_
                                   Isam C. Khoury, Esq.
                             Attorneys for Plaintiff JOHN DEDDEH

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101